UNITED STATES, Appellee

v

LARRY A. KRUTSINGER, Airman Basic, U. S. Air Force, Appellant

15 USCMA 235, 35 CMR 207

No. 18,223

February 19, 1965

*Major Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman*.

*Major William F. Rutherford* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

QUINN, Chief Judge:

Under Article 67(b)(2) of the Uniform Code of Military Justice, 10 USC § 867, The Judge Advocate General of the Air Force has asked this Court to review the decision of a board of review that the specification of which the accused was convicted was properly amended at trial.

The accused was charged with unauthorized absence, in violation of Article 86 of the Uniform Code, supra, 10 USC § 886. Originally, the specification alleged the absence from "on or about 18 May 1964 . . . until on or about 17 June 1964." However, immediately after the accused's arraignment before a special court-martial, trial counsel moved to amend the specification to show the period of unauthorized absence from 8:00 a. m., May 18, until 3:00 p. m., June 17, 1964. Individual military counsel representing the accused said he had no objection to the change.[1] The accused pleaded guilty to the amended specification. He was duly found guilty by the court-martial, and sentenced to a bad-conduct discharge, confinement at hard labor for four

---

[1] The legal qualifications of individual counsel were not noted in the record of trial. However, according to the post-trial review, he was a member of the Bar of the State of Pennsylvania, and possessed the qualifications for certification under the provisions of Article 27(b) of the Uniform Code of Military Justice, 10 USC § 827, as counsel for courts-martial.

months, and forfeiture of $55.00 per month for a like period.

A specification can be amended any time before findings. United States v Squirrell, 2 USCMA 146, 7 ▮ CMR 22; see also Rule 7 (e), Federal Rules of Criminal Procedure. But the scope of amendment is limited. Broadly, the Manual for Courts-Martial, United States, 1951, provides that the amendment cannot "include any person, offense, or matter not fairly included in the charges as preferred." *Id.*, paragraphs 33*d* and 35*a*. Judicial decision has provided further specificity to the limitation. It is now well-settled that an amendment cannot result in: (1) a different or more serious offense; (2) in raising a substantial question as to whether prosecution is barred by the statute of limitations; or, (3) in misleading the accused. United States v Johnson, 12 USCMA 710, 31 CMR 296.

While the classification provides convenient guidelines, it does not represent a mechanical formula for decision. An amendment may be valid in one situation, but impermissible in another. In the *Johnson* case, for example, the accused was charged with failing to obey a lawful order to report to Camp Lejeune. The specification alleged the order was issued by the Commanding Officer of the Marine Barracks at Brooklyn, New York. At trial, it was shown the order was issued by the Commander of the Marine Barracks at Boston. Although the amendment changed the name of the officer issuing the order, we upheld it. We recognized that "in some situations," the authority of the person issuing the order could result in an increase in punishment and, therefore, make the amendment impermissible. We noted, however, that in the circumstances of the case the authority of the issuing officer was immaterial to the offense charged. *Id.*, at page 712. Similarly, in United States v Brown, 4 USCMA 683, 687, 16 CMR 257, we sustained an alteration of the date of the commission of the offense; but we called attention to the fact that under other circumstances the amendment might be of such "substance" as to be improper.

A violation of Article 86 of the Uniform Code, supra, is complete the moment the accused departs ▮ without proper authority from the place he is required to be. Manual for Courts-Martial, supra, paragraph 165; United States v Emerson, 1 USCMA 43, 1 CMR 43. The length of time the accused remains away, however, substantially increases the punishment. An absence of not more than three days subjects the accused to a maximum punishment of confinement at hard labor for one month, and partial forfeiture of pay for one month; for an absence in excess of three days and not more than thirty days, the accused can be confined for six months at hard labor and is liable to partial forfeitures for the same period; an absence longer than thirty days increases the punishment to a dishonorable discharge, confinement at hard labor for one year, and total forfeiture of all pay and allowances. Addendum to the Manual for Courts-Martial, United States, 1951, January 1963, paragraph 127 *c*, at page 5. Thus, the duration of the absence is an aggravating circumstance. As such, it must be alleged in the specification and established by the evidence. United States v Lovell, 7 USCMA 445, 447, 22 CMR 235.

It will be recalled that the original specification here alleged the duration of the absence was from "on or about 18 May 1964" to "on or about 17 June 1964." The board of review below interpreted the allegation as specifying a period of absence of "just thirty days." This interpretation was predicated upon a Manual provision dealing with computation of the length of an unauthorized absence for the purpose of punishment. Paragraph 127*c* of the Manual for Courts-Martial, supra, provides that:

"In computing time of absence without leave, any one continuous period of absence found that totals not more than 24 hours is counted as a day; any such period found that totals more than 24 hours and not more than 48 hours is counted as two days, and so on. The hours of departure and return on different dates are

assumed to be the same if both are not found." [*Id.*, at page 217.]

An identical provision in the Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 117*c*, was construed in the same way as the board of review below construed the 1951 provision. In United States v Myers, 4 CMR (AF) 673, 674, the accused was charged with desertion. The period of unauthorized absence was alleged to be from "on or about 23 October 1950" to "on or about 22 December 1950." The court-martial acquitted the accused of desertion, but found him guilty of the lesser offense of unauthorized absence for the period alleged. If this period was not in excess of sixty days, the punishment could not include a punitive discharge; but if it was in excess of sixty days, a dishonorable discharge could be imposed. The board of review observed that the evidence showed the accused could have been charged with an absence from 5:45 a. m., October 23, until 11:45 a. m., December 22, which would have amounted to an absence of sixty-one days. Since the hours were "neither alleged nor found," however, the board of review determined that, under the Manual provision, the "hours of departure and return were the same." *Id.*, at page 675. A Navy board of review reached the same conclusion, pointing out that the Manual provision expresses the "basic proposition of law that the specification must contain all the necessary and essential elements of the offense charged and proof of these elements will not cure a failure to set them forth in the specification." United States v Kofka, 5 CMR 353, 354.

Boards of review have consistently held that, in a larceny case, a specification cannot be amended to ▆▆▆▆▆ ■ increase the value of the property allegedly stolen when the change results in increasing the punishment to which the accused is liable. United States v Pierson, 6 BR (ETO) 73, 79–80; United States v Mozzi, 1 CMR (AF) 619, 623; United States v Wolfe, 63 BR 283, 289. The principle is the same in the case of an unauthorized absence. Punishment escalates with the period of absence, just as the value of the stolen property determines the penalty for larceny. Since the amendment here included matter aggravating the seriousness of the offense, and subjected the accused to greater punishment, it was improper.

In reaching our conclusion we have not overlooked such cases as United States v Smith, 8 USCMA 178, 23 CMR 402, and United States v Spann, 10 USCMA 410, 27 CMR 484, which were relied upon by the board of review. In *Smith*, the change in the specification was from larceny to robbery. It was not, as here, accomplished by amendment of the specification at trial. The change was directed by the convening authority when he considered the disposition of the charge. The redrafted charge, which was not sworn to, was served on the accused before trial; and he was arraigned on the new charge. We pointed out that the convening authority's action was authorized by the provisions of Article 34(b), Uniform Code, supra, 10 USC § 834, in order to "conform" the charge to the probable evidence. The effect of the action taken in *Smith* was that the accused was arraigned on a valid, but unsworn, charge of robbery. Trial on an unsworn charge is waived by failure to object. Manual for Courts-Martial, United States, 1951, paragraphs 67*b* and 69; United States v May, 1 USCMA 174, 2 CMR 80. In the *Spann* case, we dealt with the special problem of importing into the procedures provided by the Uniform Code, the means for tolling the statute of limitations which were recognized by the Articles for the Government of the Navy. Under the latter procedure, it was proper to amend a specification after accused's return to military control to show the method of termination of his absence. As in *Smith*, the amendment was accomplished before the charge was served upon the accused. We held that while, ordinarily, amending a specification alleging desertion to show termination of the period of absence by apprehension results in increasing the punishment, the possibility did not exist in that case because the original specification alleged a wartime desertion, which carried a death penalty. United States v Spann, supra, at page 412.

**238**

Notwithstanding the illegality of the amendment, the Government contends the accused waived the error ██ by failing to object to it, and by entering a plea of guilty to the amended specification. In United States v Wolfe, supra, the board of review held that the accused's consent to an improper amendment did not prevent appellate consideration of the effect of the change. In United States v Johnson, supra, this Court was not deterred by the accused's plea of guilty from considering the legality of the amendment. We need not, however, be detained by a consideration of the merits of the Government's claim. On the basis of the record of trial, it is doubtful indeed whether the accused and his counsel understood the significance of the amendment. In our opinion, therefore, it would result in a miscarriage of justice to invoke the doctrine of waiver.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Air Force for resubmission to the board of review. In its discretion, it can, on the basis of the accused's plea, affirm findings of guilty on the original charge, and reassess the sentence by disapproving the bad-conduct discharge, or it can return the record of trial to the convening authority for further proceedings consistent with this opinion.

Judges FERGUSON and KILDAY concur.